THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JUAN DÍAZ RIVERA, Defendant and Appellant. SAME *v.* SAME.

Nos. 9896 and 9897. Argued April 9, 1943.—Decided May 25, 1943.

*Francisco R. Flores* for appellant. *R. A. Gómez, Prosecuting Attorney (Fiscal),* for appellee.

Mr. Justice Snyder delivered the opinion of the court.

An inspector of the Food and General Supplies Commission filed a complaint in the municipal court " . . . against Juan José Díaz Rivera and Juan Díaz Rivera, partners of Díaz Hermanos, S. en C., Utuado, P. R., for a violation of Act No. 6, 1941, committed as follows: That on May 11, 1942, and in Betances Street, of Utuado, in the Municipal Judicial District of Utuado, which forms a part of the Judicial District of Arecibo, P. R., the aforesaid defendants, Juan José Díaz Rivera and Juan Díaz Rivera, then and there, illegally and wilfully, acting as managing partners of the mercantile partnership Díaz Hnos., S. en C., of Utuado, established by deed of August 7, 1937, before notary Antonio E. Suliveres Colón, of Utuado, sold to Gabriel Beauchamps, Jr., retail merchant of this jurisdiction, a sack of rice, declared to be a necessary commodity, weighing 100 pounds, number 38, marked fh y Ca, San Juan, a transaction which was effected with Gabriel Beauchamps, Jr., for the price of EIGHT DOLLARS and seventy-five cents, as per invoice, knowing that they were obtaining in making said resale, a profit higher than seven per cent, as a reasonable margin, over the cost of importation on wholesale transactions, pursuant to the regulations of the Food and General Supplies Commission, approved by the Governor of Puerto Rico, as per Proclamation of Administrative Bulletin number 745, of January 21, 1942, . . . "

Another complaint couched in the same language, alleging a similar sale on May 4, 1942, was also filed. Both cases were tried together. Juan José Díaz Rivera was acquitted on both charges in the municipal court. Juan Díaz Rivera was convicted in both cases in the municipal court. On appeal, the district court rendered judgments of conviction, imposing in each case a sentence of 15 days in jail, a $300 fine, and payment of double the amount charged in excess of the prices fixed by the Commission. The cases are here on appeal.

■■ There is no substance to the contention of the defendant that the complaints fail to allege the Section of Act No. 6 violated. We have consistently held that "it is not necessary in a complaint filed in a municipal court to specify the law which is supposed to have been violated, but that it is sufficient to set up the facts constituting the offense . . . " (*The People* v. *Falcastro,* 17 P.R.R. 88, 90). To the same effect, *The People* v. *Benítez,* 23 P.R.R. 315. The complaints herein clearly spell out an offense under the statute in question.

Pointing out that the complaints refer to Juan José Díaz Rivera and Juan Díaz Rivera as partners of Díaz Hermanos, *S. en C.,* the defendant asserts that the lower court erred in admitting in evidence (*a*) a certificate of the Mercantile Registry of Utuado establishing the existence of the partnership Díaz Hermanos, the managing partners of which were Juan José Díaz Rivera and Juan Díaz Rivera, and (*b*) an invoice showing that the rice involved herein was bought by Díaz Hermanos from Freiría Hnos. These complaints were drafted by a layman and filed in a municipal court. They were not required to be perfect in form (*People* v. *Cordero,* 27 P.R.R. 305). The complaints were addressed to the alleged commission of crimes by individuals. The individuals were sufficiently identified by their characterization as managing partners of Díaz Hermanos. The fact that *S. en C.* was inadvertently added to the partnership name in the complaint is of no consequence in this case. There was abundant testimony identifying the defendant as a managing partner of the firm involved in the facts of this case. To upset a criminal conviction for errors grounded on such empty formalities would be to make a fetish of an extreme precision which can rarely be attained in everyday life.

■ The defendant further complains that error was committed when the inspector failed to transcribe Administra-

tive Bulletin No. 745 in the complaint, and when it was not introduced in evidence at the trial.

After providing for the creation of The Food and General Supplies Commission, §1 of Act No. 6, Laws of Puerto Rico, 1941, Special Session, provides that

"*     *     *     *     *     *     *

"The commission shall declare with the approval of the Governor what articles are to be considered of necessity. These declarations shall be proclaimed by the Governor.

"*     *     *     *     *     *     *

"4. It shall have the power, subject to the approval of the Governor, to determine the prices at which all articles of necessity may be sold by private parties, in which case a reasonable margin of profit shall be allowed, and to determine the quantities which may be sold to any person or persons and the manner of checking such sales. These determinations shall be proclaimed by the Governor; *Provided,* That such prices shall be posted to the public in a prominent and visible place in the commercial establishments.

"Any person selling articles above the rate determined by the commission, or in quantities or to persons prohibited by the commission, shall be punished for each offense by a fine of not less than $25 nor more than $1,000 and imprisonment for not more than six months, and an additional penalty equivalent to double the amount charged in excess of the prices fixed by the Commission in the transaction object of the offense.

"*     *     *     *     *     *     *"

We need not stop to reexamine *People* v. *Cuadrado,* 27 P.R.R. 767, and *People* v. *G. Garáu & Co.,* 29 P.R.R. 970, the cases cited by the defendant. It is sufficient to note that the prices fixed under Act No. 6 do not go into effect until proclaimed by the Governor. We are therefore of the opinion that the courts may take judicial notice of such a proclamation under the said statute. Consequently, it was unnecessary for the complaint to allege the contents of Administrative Bulletin No. 745, or for the government to introduce a copy thereof in evidence (See *People* v. *Sanjurjo,* 58 P.R.R. 651; *People* v. *Rivera et al.,* 31 P.R.R. 612, 13–14;

*People* v. *García,* 61 P.R.R. 618, decided March 25, 1943). Our conclusion herein is reinforced by the fact that merchants are unlikely to be unfamiliar with such proclamations, inasmuch as they are required to post them publicly in their establishments.

The defendant finally complains of the lower court's action in weighing the evidence. There is apparently no serious dispute by him that the testimony of the government, if believed by the district court, justified a finding that the rice in question had been sold by an employee of Díaz Hermanos, as a wholesale house, at a price which was higher than the cost of importation plus seven per cent, which was the wholesale price for rice fixed in Administrative Bulletin No. 745. His defense at the trial consisted principally of an effort to show by testimony which the district court did not believe that the rice in question was of a brand superior to that alleged in the complaint, entitling him to sell the same at the price admittedly exacted. His position on appeal is epitomized by the statement in his brief that "the possible responsibility of co-defendant Juan Díaz Rivera does not arise from an act of his own but from the sale of rice that may have been effected in the store of 'Díaz Hermanos *S. en C.*', by some other managing partner or by some employee of that establishment."

As a general rule, a principal or master is not criminally liable for the acts of his agent or servant, if he has not previously authorized or assented to such acts. But there are certain exceptions to this doctrine. Miller on Criminal Law, §80, pp. 248–9, puts it as follows:

"As we have seen, many statutes impose punishment irrespective of any intent to violate them and notwithstanding ignorance or mistake of fact which at common law would be an excuse. There are statutes, many of them having for their object the regulation of the sale of intoxicating liquors, which prohibit the doing of certain acts by certain classes of persons or in certain places, and which either expressly or by implication provide that such persons or the pro-

prietors of such places shall be responsible for such acts, although committed without their knowledge, or even contrary to their instructions, by their subordinates. Such are many statutes prohibiting the sale of intoxicating liquors without a license, or in violation of the conditions of the license, or prohibiting sales to minors or intoxicated persons, or prohibiting saloons to be kept open on Sunday or after a certain hour, or forbidding the windows of saloons to be curtained. Doubtless it requires a clear expression of intention on the part of the Legislature to justify a construction of a statute as imposing punishment upon a person for an act done without his knowledge or contrary to his instructions, and, unless such intention appear, the ordinary rule that a man is not criminally responsible for acts which he has not authorized must prevail; but, where the statute does so provide, it is valid. There is much conflict, real or apparent, in the decisions, and different constructions have often been placed by different courts upon similar enactments. The question for determination in each case must be whether it was the intention to require persons of the designated class to see to it at their peril that the prohibited acts are not performed.''

We need hardly detail the purposes motivating the Legislature in passing Act No. 6. It is a sweeping statute authorizing drastic action to control artificially in times of emergency the delicate mechanism of prices which are ordinarily free from government interference. To grant merchants immunity for violations of such a statute, as a general proposition, on a mere showing that they did not personally participate in the physical transaction of sale of the commodity in question, would destroy any hope of effective enforcement of the statute. We are unable to conclude that such was the intention of the Legislature.

To affirm the conviction in the instant case, we need not at the moment go so far as to hold that in passing this statute ''it was the intention to require persons of the designated class to see to it at their peril that the prohibited acts are not performed''. As we have seen, the defense here was not predicated on any theory of violation of the employer's instructions by the employee, but on testimony,

which the district court refused to believe, that the price charged was proper because of the superior brand of the rice. In the absence of convincing, or indeed any, testimony herein that the employee acted contrary to the specific instructions of the defendant—which testimony, if it had been offered, would have raised a question which we specifically leave open—we deem pertinent the language found in *People* v. *Cordero,* 27 P.R.R. 305. In affirming the judgment of conviction of an employer for the criminal offense of permitting his employees to work after the closing time provided by law, we said in that case at p. 308 that "in the absence of evidence to the contrary it must be presumed that they were working with the permission of the owner".

The defendant, nevertheless, asserts that the general rule applies herein, and that the criminal act of the employee as agent, if it took place, cannot be imputed to the principal, the defendant. The defendant cites *People* v. *Arce,* 34 P.R.R. 327, in support of his position. We find nothing in that case which indicates that the question of whether the exception to the general rule noted herein was considered by this court. We hold that the facts and statute involved in the present case are more analogous to those cases in which we have held employers liable for the adulteration of milk (*People* v. *Rodríguez,* 61 P.R.R. 708, decided April 5, 1943) and the violation of internal revenue laws (*The People* v. *Barquet et al.,* 19 P.R.R. 753, 59) committed by their employees. For a learned discussion of this field of criminal law, see Sayre, Criminal Responsibility for the Acts of Another, 43 Harv. L. Rev. 689; Sayre, Public Welfare Offenses, 33 Col. L. Rev. 55.

The remaining errors assigned are too trivial to require discussion.

The judgment of the district court will be affirmed.